**COMMISSIONER OF INTERNAL REVENUE**
**v. MORRISS REALTY CO. TRUST**
**NO. 2 et al.**
**No. 4942.**

Circuit Court of Appeals, Seventh Circuit.
Jan. 2, 1934.

Pat Malloy, Asst. Atty. Gen., and Sewall Key and Francis H. Horan, Sp. Assts. to Atty. Gen. (E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., of counsel), for petition-er.

Thomas Williamson, Mallory L. Burroughs, and George D. Burroughs, all of Edwardsville, Ill., and Cleveland A. Newton, of Washington, D. C., for respondents.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Petitioner appeals from the decision of the Board of Tax Appeals' holding that respondents' trust is not an "association" within the meaning of section 2 (a) (2) of the Revenue Acts of 1924 and 1926, 26 USCA § 1262 (a) (2). The Board held there were deficiencies for the fiscal years 1924 and 1925, and a slight overpayment for the fiscal year ending November 30, 1926.

Originally there were two cases pending before the Board, being Morriss Realty Company Trust No. 1 et al. and Morriss Realty Company Trust No. 2 et al. The avowed purpose of trust No. 1 was the liquidation of the settlor's property, and no control of the trustees was vested in the beneficiaries. In trust No. 2 the settlors of the trust were two brothers and they and certain of their children were made trustees, the purpose being the liquidation of the property, and control of the trustees by the beneficiaries was limited and the beneficiaries' certificates of interest nontransferable.

The sole contested issue before us is whether trust No. 2 was taxable as a trust or as an association under the provisions of the Revenue Acts of 1924 and 1926. Respondent had made returns for the taxable years in question as a trust or fiduciary and paid the rate applicable to income from property held in trust, as provided by the Revenue Acts of 1924 and 1926, the rate being the same as that applicable to individuals. Upon the filing of the returns the taxpayer was required to file an additional return for the years in question in the amount of $13,175.01. As to the additional income taxes assessed by the Commissioner, the taxpayer perfected an appeal to the United States Board of Tax Appeals, with the result above indicated. In redetermining the taxes it was found certain improper credits had been taken, requiring the redetermination in the amounts to which we have above referred.

Respondents Julia L. Morriss, Vernon S. Morriss, Alexander W. Morriss, Jr., and Herbert S. Morriss, were the trustees in the Mor-

riss Realty Company Trust No. 2 and held title to certain real estate in Madison county, Ill. The trust was created December 17, 1910, by a deed of trust of the grantors, A. W. Morriss and wife and R. A. Morriss, single, conveying approximately 80 acres of land, partly platted, and located at or near Granite City, Ill., to A. W. Morriss, R. A. Morriss, Vernon S. Morriss, and A. W. Morriss, Jr., as trustees for themselves; their respective beneficial interests being, A. W. Morris and R. A. Morriss, one-third each; Vernon S. Morriss and A. W. Morriss, Jr., one-sixth each. The trustees were given fee-simple title to the real estate conveyed, with power to subdivide, improve, and sell the same or any part thereof; to dedicate, construct, and improve streets; to erect dwellings and other buildings thereon; to mortgage or lease the same and collect therefrom the rents; to donate and grant rights of way; to execute deeds, and, in general, to use, enjoy, and dispose of said property as fee-simple owners, without the consent of the beneficiaries and without being in any way subject to their control and direction. The proceeds realized from their operations, after paying all expenses, taxes, etc., were to be distributed from time to time during the continuance of the trust as and whenever the trustees or a majority of them should determine, and, in any event, at the termination of the trust, to the beneficiaries named, in proportion to their respective distributive interests. It was provided the beneficiaries should have no right to partition the real estate or any title thereto or interest or estate therein.

The majority in interest were given the right to fill vacancies among the trustees caused by death, resignation, or refusal to act; the trust should continue until all of the real estate was sold, provided, in case any portion thereof remained unsold at the expiration of ten years, the trustees were to sell the same at public vendue for cash, divide the proceeds, and terminate the trust. The trustees and the beneficiaries in the deed of trust were identical. Vernon S. Morriss and A. W. Morriss, Jr., were sons of A. W. Morriss; R. A. Morriss was the nephew of A. W. Morriss and a son of Herbert S. Morriss.

In the original deed of trust of December 17, 1910, no authority was granted the trust to purchase additional real estate, and it would have none beyond the right to do so to protect the trust estate. However, during the succeeding years after the establishment of the trust, the trust purchased certain adjoining real estate and had other lands conveyed to it. The trustees and beneficiaries felt it necessary to execute the instrument of December 16, 1916, making all of the property conveyed to the trustees "since the date of the original deed of trust and that may hereafter be conveyed to them as Trustees" subject to all of the terms and provisions contained in the original deed. Later, after the death in 1919 of R. A. Morriss, trustee and beneficiary, and after his father, Herbert S. Morriss, had succeeded to his office as trustee and his rights as beneficiary, it was deemed necessary to make a further supplementary deed, which did recognize the scope of the trust to include "the purchase, subdivision, improvement and sale of the various tracts of land hereinbefore mentioned as being included in said instrument." The instrument referred to recited all of the several tracts of land which had theretofore been purchased by the trust in addition to the original trust property, and subjected the said property to the same conditions "as though they had been described in the original deed of December 17, 1910," and extended the period of the trust until December 16, 1930. Trust No. 1 expired the same day.

In 1923, A. W. Morriss died, leaving a widow, Julia L. Morriss, and four children, to wit: Vernon S. Morriss and A. E. Morriss, Jr., who were trustees, and H. A. Morriss and E. M. Matlock. Julia L. Morriss, the widow, succeeded her husband as trustee. Prior to the death of A. W. Morriss, there was no change in the trustees or beneficiaries except that occasioned by the death of R. A. Morriss, in 1918. No beneficial certificates of any kind were ever issued to the beneficiaries, nor were any provided for in the original trust agreement or extensions thereof. Upon the death of A. W. Morriss, his one-third beneficial interest in the trust estate went in equal parts to his widow and four children, one-fifth to each. One year after the death of A. W. Morriss, in order to settle his estate, all of the beneficiaries of the trust were given nontransferable certificates, signed by the trustees, showing their respective interests.

During and prior to 1919 the trustees purchased several tracts of land adjoining the original trust property. Prior to the death of A. W. Morriss and the taxable years here involved, the trustees were engaged in subdividing and selling these lands. A. W. Morriss, Jr., the only active trustee, had charge of the sales; he made distribution among the beneficiaries from time to time when he thought proper. At the time of the death of his father, the trust had several hundred lots for sale and about twenty acres of unplatted

property. After his death in 1923, neither the trustees nor the beneficiaries desired to continue the trust, and it was determined to make sale of the remaining property and liquidate the trust as early as possible. All of the trust property was offered for sale; no additional property was acquired during the taxable years nor subsequent to 1919, and no business of any kind was conducted, except that of selling the property of the trust, or doing such things as were necessary to stimulate sales, with a view to an early liquidation. For the purpose of improving the property and stimulating the sale of lots, a few houses were erected in the subdivision, on which money was borrowed by mortgage to pay the cost thereof, and which houses were from time to time sold on time contracts. During the taxable years the only purpose of the trustees was to liquidate the trust.

The trust was created by two brothers, Herbert S. Morriss, who contributed one-third of the property, and who gave it to his son R. A. Morriss, who was made a trustee, and A. W. Morriss, who contributed two-thirds, and gave one-half of what he contributed (one-third of the whole) to his sons, Vernon S. Morriss and A. W. Morriss.

The Board of Tax Appeals found that the ultimate purpose of the trust was the liquidation of the trust property and the equitable distribution of the proceeds among the several beneficiaries.

The Commissioner contends that the trust was taxable in the years 1924, 1925, and 1926 as a "corporation" under the statutes above referred to, section 2 (a) (2), which provide: "(a) * * * When used in this title— * * * (2) The term 'corporation' includes associations, joint-stock companies, and insurance companies."

Respondents contend the trust was taxable at the rate applicable to individuals, pursuant to section 219 (a) (2, 4), (b) (2) of the Revenue Acts of 1924 and 1926 (26 USCA § 960 note), which acts are identical and are in part as follows:

Section 219 "(a) The tax imposed by Parts I and II of this chapter [Parts I and II being applicable to individuals] shall apply to the income of * * * any kind of property held in trust, including—* * *

"(2) Income which is to be distributed currently by the fiduciary to the beneficiaries; * * *

"(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

"(b) Except as otherwise provided in subdivisions (g) and (h), the tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary— * * *

"(2) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries. * * *"

Following the opinion of the Supreme Court in Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, and pursuant to the authority granted by section 1001, Revenue Act of 1924, and section 1101, Revenue Act of 1926 (26 USCA § 1245 and note), the Commissioner of Internal Revenue promulgated regulations defining the term "association" as used in those acts. In article 1502, Regulations 65, it was provided: "Associations * * * include associations, common law trusts and organizations by whatever name known which *act or do business in an organized capacity*, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise. * * *" (Italics inserted.)

Article 1504 of the same regulations provides: "Operating trusts, whether or not of the Massachusetts type, in which the trustees are not restricted to the mere collection of funds and their payments to beneficiaries but are *associated together in much the same manner as directors in a corporation for the purpose of carrying on some business enterprise*, are to be deemed associations within the meaning of the act regardless of the control exercised by the beneficiaries." (Italics inserted.)

August 21, 1925, article 1504 of Regulations 65 was construed by Treasury Decision No. 3748, IV–2 Cumulative Bulletin 7, in which it was held: "Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, *but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise*, the trust is an association within the meaning of the statute." (Italics inserted.)

Upon the theory that, since the provisions of article 1504 of Regulations 65, as construed by the Treasury Decision 3748, were carried forward in Regulations 69, promulgated in August, 1926, and with different article numbers in Regulations 74, the term "association," as used in the Revenue Acts

of 1924 and 1926, applies to any trust which carries on business, and this interpretation has the effect of broadening the classification, because, when the Revenue Acts of 1924, 1926, and 1928 were passed by re-enacting the statute in the light of the regulations, the Congress adopted the regulations.

When these regulations upon which the Commissioner relies are examined, it must be observed that to be taxed as a corporation the trust must be one which "acts or does business in an organized capacity" (1502), and where the trustees "are associated together in much the same manner as directors in a corporation for the purpose of carrying on some business enterprise" (1504). Treasury Decision No. 3748 holds that, even in the absence of any control by the beneficiaries if the trustees are associated together with similar or greater powers than the directors of a corporation for the purpose of carrying on some business enterprise, then in such cases the trust is an "association" within the meaning of the Revenue Acts.

There is scarcely any trust which, in its administration, does not necessarily involve the doing of some kind of business.

To give the regulations and the Treasury decision the construction contended for by the Commissioner in this case would have the force and effect of nullifying the express provisions of the statute providing that trusts shall be taxed as individuals. The expression, "for the purpose of carrying on some business enterprise," as used in the regulations and Treasury decision referred to, and which was undoubtedly designed to comply with what the Supreme Court said in Hecht v. Malley, supra, must be limited to trusts which carry "on some business enterprise" for the purpose of gain or profit and under some type of corporate organization.

Trust No. 2, for the purpose of liquidation, owned certain tracts of land which the settlors designed to be sold so as to net the most money for distribution among the beneficiaries according to their respective interests. They were located in the environs of Granite City; their sale for purely agricultural purposes would not have brought a very large return, being located as they were adjacent to an industrial center; it was clear that their greatest value lay in subdividing and selling them as city or town lots. To do so would necessarily take a considerable period of time, and the settlors and trustees had a perfect right to sell the assets of the trust estate, the lands in question, in the most satisfactory way in order to turn the property into cash for the use of the beneficiaries and give them the benefit of the largest measure of distribution.

In determining whether trust No. 2 should be taxed as a "trust" or as an "association," we must not lose sight of the fact that we are here concerned with the taxes for the respective years 1924, 1925, and 1926. Had it not been for the supplemental deeds of trust of 1916 and 1919, ratifying the purchase of certain lands adjacent to the trust estate, and the extension of the period of trust, it is quite likely this appeal would never have been prosecuted. So, the question naturally arises: Did the supplementary deeds of 1916 and 1919 and the subsequent history of the trust change its character to one "for the purpose of doing business" *for profit?*

It is not without difficulty that we answer this question in the negative, in the light of the fact that the trustees purchased, platted, and sold adjacent lands. It may be that the trustees exceeded their authority under the original deed of trust in purchasing lands for subdivision in addition to those covered by the trust deed of 1910, and yet it may have been absolutely necessary to do so in order to protect the trust estate and prevent its great diminution in value. Such was the view of the Board of Tax Appeals. The trustees and the beneficiaries were the same parties in 1916, and substantially the same in 1919, as in 1910. We feel that whether or not the trustees did exceed their powers is a matter for the beneficiaries to decide, and the execution of the two supplementary deeds are of no greater effect than to ratify that conduct.

However, whatever may be the effect of the conduct of the trustees during the period from 1910 to 1919, which it is contended changed the character of the trust, in determining the true objects and purposes of the trust, it is appropriate to consider the subsequent events in the conduct of the affairs of the trust. After the deed of 1919, no more property was purchased for the benefit of the trust. The entire efforts of the trustees were toward liquidating the assets which they then had. Upon the death of A. W. Morriss, in 1923, the trust became one only of liquidation. The one-third interest of A. W. Morriss descended in five equal parts to his wife and four children, and it was shown upon the hearing before the Board that it became and was from then on the wish and desire of all of the beneficiaries, as well as the trustees, that the assets of the trust should be

liquidated, and the trust terminated as early as possible. If there had been any other business than the administration of the trust prior to the death of A. W. Morriss, it terminated with his death. So, the record shows, that during the taxable years involved, 1924, 1925, and 1926, the trust was clearly in liquidation.

As this court said in Tyson v. Commissioner, 54 F.(2d) 29, 31: "Probably the best test is to be found in the activities of the entity." In that case the evidence of witnesses was considered in determining the question as to whether or not the trust was in fact a trust or an association for the purpose of taxation. There we said: "It necessarily follows then, and numerous decisions sustain this view, that in determining when a trust is an association courts must look to the substance rather than the form of the entity used to carry on the business. Likewise it must be more influenced by the instrument's activities than the ascertainment of the possible field of its activity."

The provisions in the supplementary deeds of trust of 1916 and 1919, empowering the trustees to purchase, subdivide, improve, and sell real estate, suggest that counsel who drew the instruments felt they were covering a contingency not anticipated when the original deed of trust was written, and that it would not be permitted to happen again, as was suggested in Tyson v. Commissioner, etc., supra. There was nothing unnatural in extending the limitation of trust No. 2, so that it would expire at the same time as trust No. 1.

The nature of this particular trust received careful consideration by the Board. In the written opinion of the Board, the fact that trust No. 1 was an "ancestral" trust was discussed. It was said that trust No. 1 "has certain aspects of an 'ancestral trust,' which has been passed upon by the Board in several cases hereinafter considered, for although the settlor had the sole beneficial interest in the beginning, his children were given the management of the property during his lifetime and whenever the beneficiary should die, would become the heirs of such beneficial interest, as they in fact ultimately became."

The opinion discusses the business operations of the trustees, who, in trust No. 1, were authorized to and did purchase additional land and had authority to and did subdivide it into city property; and, in order to sell the lands more readily, built houses upon some of them; they also rented to tenants two office buildings, etc. On the authority of the Supreme Court cases decided under the Corporation Excise Tax Act of 1909 (36 Stat. 112), and upon which the Commissioner relied, the Board said that the trustees were engaged in business under Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill R. R. Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842; United States v. Emery, Bird, Thayer Realty Co., 237 U. S 28, 35 S. Ct. 499, 59 L. Ed. 825. However, continuing in this discussion the Board said: "But even if we say that they were engaged in business we must not lose sight of the original purpose for which the trust was created, that of liquidation of the property; and the doing of other acts incidental to this ultimate purpose would be justified on the ground of conservation of property and securing the means of earlier liquidation. This argument was completely answered in Blair v. Wilson Syndicate Trust (C. C. A.) 39 F.(2d) 43, * * *."

In discussing trust No. 2, the Board said:

"Applying to this trust the same principles which we have already discussed, we find that it savors, like the first trust, of an ancestral creation since the original settlors were two brothers and the beneficiaries were the children of the two settlors, one settlor also being included in this group. The ultimate purpose also was the liquidation of the property. It is true that as in the case of the first trust, new property was acquired by the trust from time to time, including three substantial purchases as set out in the facts * * *. These were, however, adjoining properties. The trustees also subdivided the property of the trust and built houses on it from time to time in order to expedite the sale but the ultimate purpose being liquidation and the trust having more or less of an ancestral character, we may disregard the acts done by the trustees incidental to the conservation and more ready liquidation of the property. It was, like Trust No. 1, strictly a family affair.

"Since Trust No. 2 meets this important test it is idle to insist upon here, or even consider, other criteria which might distinguish it from Trust No. 1. Neither counsel for the petitioner nor for the respondent attempted to distinguish one from the other."

We believe that the conclusion reached by the Board of Tax Appeals was sound and it will therefore be affirmed.