## MYERS et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6030.

Circuit Court of Appeals, Seventh Circuit.

March 23, 1937.

Clayton J. Barber and Alton G. Hall, both of Springfield, Ill., for petitioners.

Robert H. Jackson, Sewall Key, and A. F. Prescott, all of Washington, D. C., for respondent.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

BRIGGLE, District Judge.

Petitioners challenge the correctness of deficiency assessments for income taxes for the years 1927 to 1931, both inclusive, made by the Commissioner of Internal Revenue against the Myers Bros. Building Trust which have been approved by the Board of Tax Appeals.

The decision turns upon whether the trust is an "association" within the mean-

ing of section 2 (a) (2) of the Revenue Act of 1926 (44 Stat. 9) and section 701 (a) (2) of the Revenue Act of 1928 (45 Stat. 791, 878), 26 U.SC.A. § 1696 (3). So far as here applicable, the two sections are the same and provide that "the term 'corporation' includes associations, joint-stock companies, and insurance companies." If the trust be deemed an "association," it is taxable as a corporation and, if not, no tax is due from the trust as such. Treasury Regulations No. 74, promulgated under the 1928 act are appended in the margin.[1] The regulations under the 1926 act so far as here material are essentially the same.

The facts, largely stipulated and in no event in dispute, are: For many years prior to the formation of the trust in question, Albert Myers, Louis M. Myers, and Julius .M. Myers, brothers, were the owners, as equal tenants in common, of the real estate involved and located at the southwest corner of Fifth and Washington streets in the city of Springfield, Ill. This property was improved by a five-story building, the first and second and basement floors of which were occupied by Myers Bros. (a corporation, composed of the three brothers), and the corporation has for many years conducted a retail clothing business therein. The upper floors were rented for offices. This building was destroyed by fire in 1924 and was replaced by a ten-story building, the lower four floors and basement of which have since been leased to and occupied by the corporation. The upper floors of this new building were also rented for office purposes.

As a part of the financing of the new building, the three brothers borrowed from the Franklin Life Insurance Company on February 2, 1925, $625,000 and gave a mortgage on the property as security. Under the terms of the mortgage, this principal sum fell due at the rate of $25,000 semiannually, with final maturity on February 2, 1940. All three brothers were married and had children, and at the time two of them had minor children. They felt that if the interest of one or more of them should fall into the hands of their heirs, and partition should result, that difficulties might be encountered in maintaining the integrity of the property in view of the large mortgage. No one or two of them would have been able on a partition sale to have purchased and financed the property. In order, therefore, to make more certain their ability to hold the property together until the liquidation of the mortgage (with an allowance of five years additional time for safety) they determined upon the formation of the trust here involved.

On February 27, 1925, the three brothers, with their wives joining, conveyed the property to Morris R. Myers, the adult son of one of the brothers and as a part of the same transaction, and on February

[1] Regulations 74, articles 1312 and 1314 under the Revenue Act of 1928 read as follows:

Art. 1312. *Association*—Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. A corporation which has ceased to exist in contemplation of law but continues its business in quasi-corporate form is an association or corporation within the meaning of Section 701.

Art. 1314. *Association distinguished from trust.* Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by sections 161–170 and by articles 861–891. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 701. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the Act.

28, 1925, Morris R. Myers and wife, by a separate instrument, reconveyed the property to the three brothers as trustees upon the following trust as recited in the instrument:

"1. To hold, manage, improve, possess, and dispose of said property, as a single and undivided trust estate.

"2. To adopt the name Myers Brothers Building Trust, or other suitable name, for the management and control of said real estate.

"3. In the control, management and disposition of said trust estate, the Trustees shall not be limited to the usual powers of trustees, but said Trustees shall have the same and as absolute powers as if they were the absolute owners of said trust estate free and clear of any right, title and claim of any other person therein; including, among other powers, as full power to sell, mortgage, lease, convey, give acquittance for the consideration and reinvest, as an absolute owner would have.

"4. Said Albert Myers, Louis M. Myers and Julius M. Myers shall each have an undivided one-third beneficial interest in said trust estate (including both the income and the principal or corpus thereof), and each of said beneficiaries shall have the right, from time to time, by instrument or instruments in writing duly signed, sealed and acknowledged by him and filed with the Trustees (or by his Last Will and Testament) to transfer, assign, settle and direct that any or all of his said one-third beneficial interest in said trust estate be paid to or be or become the property of any member or members of his family or any other person or persons whomsoever, in such shares and proportions and upon such terms and conditions and subject to such powers of revocation, alteration and recall as may be reserved or provided in such instrument or instruments or in such will.

"5. If any original Trustee herein should resign or be disqualified or unable to act as trustee by reason of death or other cause, he shall be succeeded as Trustee by such of his children as and when they severally attain the age of twenty-five years; but, so long as he have no child who has attained such age, his widow, if living, shall be entitled to act as such succeeding trustee; provided, however, such widow or children so acting as trustee or trustees shall, together have no greater power in the management, control and disposition of the trust property than such preceding trustee possessed. And in each and every such case, the title to the trust estate shall pass to and vest in the succeeding trustees without formal conveyance.

"6. The Trustees shall, at their option, be entitled to reasonable compensation not exceeding, however, three (3) per cent. of the gross income from the trust property.

"7. The term of this trust shall be twenty years from the date hereof, but such term may at any time be extended or shortened or this trust may be terminated, by written instrument signed by all of the original Trustees or by all the then beneficiaries, and filed for record in the Recorder's office of said Sangamon County.

"8. Upon the termination of the period of this trust, the Trustees shall unless otherwise agreed upon with all then adult beneficiaries, sell, dispose of and convert into money the trust estate and distribute the net proceeds thereof among the beneficiaries in accordance with their respective interests.

"9. The original Trustees may, by unanimous written agreement, recorded as aforesaid, alter, modify, add to, or otherwise change any of the terms or conditions of this trust. And Albert Myers, Louis M. Myers and Julius M. Myers hereby join in the execution of this indenture to signify their acceptance of the trusts herein created."

The three brothers owned as tenants in common other real estate in Springfield and in Jacksonville, Ill., and Louis M. Myers had for a long time acted as manager of all the properties. He continued in this capacity not only with reference to those properties in which the cotenancy remained, but also continued as manager of the one property covered by the trust agreement. While the trust instrument provided that the trustees might compensate themselves as trustees, they have not at any time received any such compensation. No capital stock was issued and no other evidences of the beneficial interests in the trust except the trust agreement itself; no formal meetings of shareholders were had and the management of the property continued in precisely the same manner as before the trust agreement—the one brother acting freely, without directions, and only occasionally with suggestions from the others. They had no by-laws, and no formal declaration of dividends was

made although at irregular intervals sums were withdrawn from the trust estate for the use of the beneficiaries. There was no seal and no officers of the trust. The trust income consisted wholly of rents from the building; and the expenses were made up of taxes, interest on mortgage, insurance, maintenance of the building, and depreciation.

It is thus seen that the trust in question was brought into being in relationship to a particular piece of property owned by three brothers as cotenants for many years. They had reached a period in their affairs when it was desired to replace the former improvements with a modern building. Their chief tenant of both the old and the new buildings was Myers Bros., the corporation, their own enterprise. The erection of a building of the kind desired required an expenditure of nearly a million dollars and the borrowing of funds of $625,000. Motivated by a desire to protect their investment and to maintain the same intact during the time deemed necessary to liquidate the mortgage indebtedness, without the property being subject to the usual hazard of death and succession, they created the trust. Before doing so, they had each personally obligated themselves on the mortgage indebtedness and neither had sought or obtained any curtailment of his personal liability in reference to the trust. No new capital was brought in other than that borrowed by the three brothers, and the interests in the property remained the same at all pertinent times.

We think it reasonably clear on the facts stated that the purpose of this trust was not the operation of a business enterprise. The only business transacted by the trust was the keeping of the building in a tenantable condition and the collection of rents for the use of the owners of the beneficial interests. Instead of concluding that the trust was formed for a business purpose, rather do we think it fair to say that such business as it transacted was merely incidental to the broader purpose of preservation. The inception of the trust had no relation to the transaction of any business. The construction of the building had many months before been determined upon and was well on its way to completion when the trust was formed. Every trust of the purest type necessarily has attributes of a business organization. Its very existence depends on such. That characteristic alone cannot brand it as an "association." If the father of the three

Myers brothers had by his will set up a trust estate for their benefit in the precise manner here indicated, it would have been almost typical of the traditional type of family trust. We think it none the less so that its creation has been by the three brothers.

Respondent asserts in his brief that the trust brought the advantages of corporate organization by avoiding the responsibilities characteristic of a partnership. We find nothing in the facts or the law of Illinois to support this assertion. The trust instrument contains nothing exempting or limiting the personal liability of the trustees. Under such circumstances, they cannot be said to have avoided responsibility. Bradner Smith & Co. v. Williams, 178 Ill. 420, 53 N.E. 358; Wahl v. Schmidt, 307 Ill. 331, 138 N.E. 604. Moreover, the avoidance of personal responsibility seems to have been no part of the trust arrangement. The assumption of a personal liability of more than $625,000 only a few days prior to the trust instrument speaks loudly against any intention of limiting the liability of the brothers individually, as this might have been avoided, had they so wished, by the exercise of only a little ingenuity.

The facts before the court in the case of Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 295, 80 L.Ed. 263, and the three companion cases of Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273, Helvering, Commissioner, v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275, Helvering, Commissioner, v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278, are far from the facts of the instant case. Neither are the facts of Reinecke v. Kaempfer (C. C.A.) 72 F.(2d) 469; Pelton v. Commissioner (C.C.A.) 82 F.(2d) 473; nor Commissioner v. Highlands Evanston-Lincolnwood Sub., etc., 88 F.(2d) 355 (decided by this court, February 16, 1937), comparable to those here. Cf. Commissioner v. McCormick (C.C.A.) 68 F.(2d) 653; Commissioner v. Morriss Realty Trust Co. (C.C. A.) 68 F.(2d) 648; Tyson v. Commissioner (C.C.A.) 54 F.(2d) 29.

It would serve no useful purpose to enter into a discussion of the facts of those cases and to point out wherein we deem them distinguishable from the facts of the instant case. We only pause to point out that in the Swanson Case, which the Board thought quite similar to the pres-

90

ent case, the agreement provided that neither the trustees nor the beneficiaries should be personally liable and that all persons dealing with the trustees should look only to the property of the trust. Other distinctions are present in this and the other cases referred to.

Each case must be determined upon its own facts and each fact must be given its proper relation to other facts in reaching a determination of the ultimate question. The fact that broad powers are delegated by the trust instrument and that the beneficiaries cannot be heard to say that other or different powers existed than there described, are to be considered in relation to other salient facts and circumstances which so clearly evidence the purpose and plan of the parties. Chief Justice Hughes in his learned discussion of the question in the Morrissey Case, supra, said, "It is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise." In the same case he uses this significant language: "In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains."

Our decision is not at variance with any fact found by the Board—we only differ in the conclusions to be drawn therefrom. The majority of the court are of the opinion that the undisputed facts disclose a pure trust not taxable as an association.

The order of the Board is reversed and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.