**HELVERING, Com'r of Internal Revenue, v. WASHBURN.**

**No. 11250.**

Circuit Court of Appeals, Eighth Circuit. Oct. 21, 1938.

§

S. Dee Hanson, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Leland W. Scott, of Minneapolis, Minn. (John W. Windhorst and Junell, Fletcher, Dorsey, Barker & Colman, all of Minneapolis, Minn., on the brief), for respondent.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving alleged deficiency in income tax for 1933. The question presented for decision is whether South Texas Syndicate, of which A. McC. Washburn is trustee, is an association taxable as a corporation within the meaning of Section 1111(a) (2) of the Revenue Act of 1932, 26 U.S.C.A. § 1696 (3), for the calendar year 1933.

In 1900, Jed L. Washburn, with five other individuals who contributed five-sixths of the money, purchased 127,000 acres of grazing land in LaSalle and McCullen counties in Texas. The land is in one tract, and is typical south Texas grazing land with very little water fit for human beings to drink but with sufficient water which cattle will drink to support a certain amount of grazing. The land was purchased with the expectation that it could be sold in the near future at a profit. Ef-

forts were made throughout the lifetime of Jed L. Washburn to sell the land, but without success. He died testate August 27, 1931, domiciled in the State of Minnesota, holding legal title to the land.

In his lifetime, Jed L. Washburn executed certificates of beneficial interests which recited that he held legal title to the land, and which showed the respective beneficial interests in all proceeds of sales, rentals and revenues from the land. Provision was made that no sales or other disposition would be made without first advising with these parties and securing assent thereto by all or a three-fourths majority, this not to be deemed, however, an inhibition which should in any manner cloud or affect the title of any grantee, lessee, or licensee. Provision was also made that in case of his death while seized with title to the land, it would be incumbent upon his representatives to transfer to the owners of the beneficial interests an interest in the land corresponding to their beneficial interests.

In his will, Jed L. Washburn empowered and directed his executors to adjust the various interests in the land, and to convey, if they should so determine, the corresponding interests in the land in fee to the holders of the beneficial interests, or, by agreement with them, upon a division or partition to make all necessary conveyances, or, if they deemed it best to adjust the interests of all parties holding such beneficial interests through proceedings in court, either by way of partition or sale and distribution of the proceeds, they were empowered to do so.

Upon the death of Jed L. Washburn, his son, A. McC. Washburn, by agreement with the persons having beneficial interest, took title to the property and in turn executed certificates of beneficial interest in a so-called South Texas Syndicate. Each beneficiary received a certificate for the proportionate number of the 30,000 shares equal to his interest in the whole property. These certificates recite that A. McC. Washburn holds legal title to the land; that he is to have all powers with reference to and in connection with the property as if he were sole owner; that the net proceeds derived from the property, after paying expenses, will be distributed to the beneficiaries from time to time; that death of a beneficiary or assignment of his interest shall not terminate the trust; that the certificates are transferable and that upon

the death, resignation or removal of the trustee, a judge of the District Court of Hennepin County, Minnesota, shall have power to appoint a successor upon application of at least three-fourths of the shares or total interest.

The original owners of the interests outside of the estate of Jed L. Washburn, deceased, were all deceased, and their interests had passed to heirs and devisees. No transfers had been made by sale. At the time of the death of Jed L. Washburn, three corporations, fifteen individuals, four trusts, and the Washburn estate were the beneficial owners of the property. These owners were widely scattered throughout the states and in foreign countries. Since the death of Jed L. Washburn, A. McC. Washburn has made two trips to Texas in connection with the property. The actual management of the property is and has been in the hands of an agent, John T. Pearson, of Fort Worth, Texas, who was made the executor of the will of Jed L. Washburn. Pearson is an attorney and he receives for his services from the Syndicate a fixed monthly retainer, plus such additional allowance as may be made at the end of the year, if at that time A. McC. Washburn determines that the work done during the year is in excess of that contemplated when the fixed monthly retainer was agreed upon.

Washburn's interest in holding the property is to make a profitable sale at the earliest practicable date. The difficulty in selling the property lies in the fact that it is only in large tracts and can not be divided into more than three parts without affecting its value. There is comparatively little grazing land for sale in Texas at the present time, and it is well known to cattle men and real estate agents in the southwest that this property is for sale. The number of prospects for sale has been increasing, and Washburn expects that the property will be sold within two years. None of the prospects for sale to date has reached the point of making an actual offer, and the trustee in consequence has never refused an offer because it was too low.

A. McC. Washburn testified that upon his father's death, in view of the number of people interested in the property, they would have to take measures to get the title in shape if they hoped to liquidate, so that it could be delivered, and with that end in view, he consulted with his attorney at Fort Worth, and after submitting it to other real estate lawyers in Texas, it was decided that the will of his father was inadequate so far as making it possible to transfer the title to another party was concerned, and that if they intended to hold the property together as any kind of unit for sale purposes they would have to have a deed signed by every possible ultimate beneficiary of the property. He testified that he never makes any reinvestment of the returns from the property and does not consider that he has power to do so, believing that his sole interest is to liquidate the property and distribute the proceeds; that in his opinion the purpose in forming the Syndicate was not to carry out the activities formerly carried on by his father, but that his principal thought in making the personal sacrifice of doing the work in connection with it that he was doing for nothing, was the fact that he could see no other way to liquidate the property and get the money out of it.

The property is leased for grazing purposes and the income from the leases constitutes nearly all of the income. With one or two exceptions, no leases for a period of more than one or two years have been entered into by the trustee. All leases contain a provision making them cancellable in case the property is sold. This clause reduces the rental which might otherwise be obtained. None of the persons beneficially interested in the property takes any part in its management, with the exception of Washburn, the trustee. He spends very little of his time performing those duties. His business or occupation is acting as Vice President and General Counsel for the First National Bank and Trust Company of Minneapolis and of the First Bank Stock Corporation. The activities of Pearson, the attorney at Forth Worth, representing Washburn, consist in investigation of all possibilities of sale, procuring leases (but not executing them), and supervising the management of the property in the way of fencing and drilling wells for water. There is very little repair or maintenance work done on the property. There have been certain expenditures for drilling wells and reservoirs and building fences. These wells, reservoirs, and fences were built upon the recommendation of Pearson that the possibility of sale of the land would be thereby enhanced. Washburn has sole authority to execute leases, and since 1932 he has executed approximately twelve. He keeps the records of the trust and

handles all distributions to beneficiaries. He acts in a supervisory or consulting capacity with Pearson, but the latter handles the collections of rentals and the payment of expenses. Washburn did not know the original cost of this property, but the one-sixth interest of his father was valued at $4 per acre for Federal estate tax purposes. Receipts for rents in 1932 were $17,537.50, and in 1933 were $26,138.72. In these years, $6,000 was disbursed to the beneficiaries.

The Board of Tax Appeals, upon the foregoing facts found by it, held that the trust was a liquidating trust taxable as a strict trust and not as an association, and that there was no deficiency for 1933.

The petitioner contends that the "trust" is "an association" taxable as such under the provisions of Section 1111(a) (2), Revenue Act of 1932, supra, which provides that when used in the Act, the term "corporation" includes associations, joint-stock companies, and insurance companies.

■ It is not our province to weigh the evidence, and if there is substantial evidence to sustain the findings of the Board of Tax Appeals we must accept such findings. In such circumstances, we may only determine whether the correct rule of law was applied by the Board to the facts found. Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 57 S.Ct. 324, 81 L.Ed. 491; General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 80 L.Ed. 154.

■ While the form of the trust here presented is doubtless within the comprehensive meaning of the word "association," as that term has been defined, explained, and developed by the decisions of the Supreme Court (Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L. Ed. 278), the controlling question is not the similarity in form to corporate organizations, but rather the purpose of the alleged trust. A. A. Lewis & Co. v. Commissioner, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. 1174; United States v. Rayburn, 8 Cir., 91 F.2d 162; Commissioner v. Atherton, 9 Cir., 50 F.2d 740; Commissioner v. Morriss Realty Co. Trust, 7 Cir., 68 F.2d 648. If there is a purpose of immediate liquidation as soon as circumstances will permit, and the carrying on of business is only incidental and necessary for the preservation of the property, no taxable association has resulted. Some business was necessarily transacted. As said in Commissioner v. Morriss Realty Co. Trust, supra: "There is scarcely any trust which, in its administration, does not necessarily involve the doing of some kind of business." [Page 651.]

■ The trust, as found by the Board of Tax Appeals and shown by the evidence, was formed for the purpose of getting the title in condition to make a sale of the property and was necessary because of the large number of persons interested in the property who were scattered over the country. The trustee has no power of reinvestment of the proceeds of a sale or from current income, except for repairs and improvements on the property. As said by the Board of Tax Appeals in its opinion: "There was not an association of individuals in this case for the purpose of carrying on a business. Washburn simply continued the relationship to the other beneficial owners which his father had with them. All parties have been interested in the sale of the property. Continuous efforts have been made to effect a sale. None of the parties is interested in engaging in cattle raising or in making leases to cattle men for the purpose of deriving an income from the land. The entire evidence shows that the rental received from the leases affords no adequate return upon the value of the land. Greater rentals could be realized if the trust were willing to make long-term leases which would not contain a provision for cancellation upon the sale of its land. This indicates very clearly that there has been no attempt on the part of the trust to operate a business for profit."

The beneficial owners, with the exception of A. McC. Washburn, have no control over the management of the property, and he received no compensation for his work. The certificates of beneficial owners, while transferable, are not listed on the stock exchange and are not subject to commercial transfer, as there is no market for them and no trading. All transfers were formal, resulting from inheritance or other changes in circumstances. The formation of the trust resulted in no new activity relative to the property and served only to emphasize the purpose of the parties to liquidate the investment.

In Commissioner v. Atherton, supra, the characteristics of the trust considered were very similar to the one here before us. It is there said [page 742]: "In the instant case the trustees are holding parcels of land for an opportunity to sell, collecting rents and paying taxes and distributing available funds, and it is a strict trust."

Under the findings made by the Board, which are sustained by substantial evidence, we are of the view that this is a liquidating trust as distinguished from an association taxable under Section 1111(a)(2) of the Revenue Act of 1932, supra.

The decision of the Board of Tax Appeals is therefore affirmed.